OPINION OF THE COURT
 

 Gabrielli, J.
 

 The Mohonk Trust has commenced these two proceedings pursuant to article 7 of the Real Property Tax Law seeking to challenge the assessment of real property taxes by respondent Town of Gardiner against some 1,801 acres of land within the town owned and operated by the Trust as a part of a wilderness area. Petitioner contends that the land is exempt from real property taxation by operation of section 421 (subd 1, par [a]) of the Real Property Tax Law. Petitioner’s arguments have been rejected by all courts below, and petitioner now appeals to this court as of right pursuant to CPLR 5601 (subd [a], par i). The appeal presents two issues of law calling for our consideration: first, whether property owned by a trust if otherwise qualified, is exempted by section 421 (subd 1, par [a]); and, second, whether the use of real property for environmental and conservation purposes as a wilderness area open to the public constitutes a charitable use exempt under the statute. We conclude that both questions must be answered in the affirmative, and thus the order appealed from should be reversed.
 

 There exists no dispute as to the relevant facts. The Mo-honk Trust was created by an agreement dated February 26, 1963, between the donor, one Mabel Craven Smiley, and six named trustees. The main purposes of the Trust, as stated in the agreement, are "to devote and apply the [Trust] property * * * and the income to be derived therefrom exclusively for charitable, religious, scientific, literary, or educational purposes * * * provided, however, that no part of this Trust fund shall inure to the benefit of any private shareholder or individual”. The agreement also lists a number of secondary purposes, which are to be effectuated "in harmony with the foregoing”: "to effectively contribute to the public welfare in a significant fashion; to advance the scientific, educational, cultural arts; to revive the fundamental values in life that have become obscured; to re-emphasize the humanitarian concern
 
 *480
 
 for life and to promote the integration of spiritual values with physical needs and mental activities, in both man’s relationship to his physical environment and the interrelationship of humans”.
 

 The Trust owns some 5,000 acres of undeveloped wilderness land located in the upper reaches of the Shawangunk Mountains. The land is heavily wooded with hardwood and evergreens and contains a variety of geological formations. It includes some of the most beautiful land in New York State. Most of this property was originally owned by members of the Smiley family, who sold the land to the Trust at considerably less than market value. The Smiley’s own a resort and hotel called Lake Mohonk, which is situated on some 2,500 acres adjacent to the Trust property. The creator of the Trust was a member of the Smiley family, as are several of the trustees.
 

 The Trust is managed by a board of trustees which meets several times a year and which functions in the interim through several standing committees. It employs an administrator, a secretary, a senior ranger, several seasonal rangers, a part-time research assistant, and a part-time maintenance worker.
 

 The Trust is supported in large part by contributions, and also derives some income from fees charged members of the public who use and enjoy the Trust lands. Most of the Trust’s income is used to maintain the Trust lands and to carry out a number of activities related to the lands; occasionally the Trust will also contribute funds to various charitable organizations. It is recognized as a tax-exempt organization by the Federal Government, and submits annual reports to the New York State Board of Social Welfare as a charitable organization.
 

 The Trust lands are primarily used for a variety of environmental, conservation, educational and compatible recreational purposes. The land is maintained in its natural state in an attempt to preserve some part of our natural heritage for the enjoyment and benefit of present and future generations. The Trust has created a system of trails through the wilderness areas, and provides guide and informational services while at the same time maintaining and protecting the unique plant and animal life found on the Trust lands. A large number of
 
 schools and
 
 universities throughout the country have included field and study trips to the Trust lands as an essential part of their curricula in an assortment of fields including geology,
 
 *481
 
 biology, zoology, forestry, and ecology, as was indicated by the many expert witnesses who testified on petitioner’s behalf. The Trust itself maintains records on the development and growth of the plant and animal life in the area, and numerous scientific studies are conducted on Trust property. In addition, members of the public are allowed to use Trust land for activities such as rock climbing, backpacking, camping, birdwatching and nature hikes.
 

 Members of the public are charged $1.25 per adult for use of the Trust facilities and revenue so derived is used to maintain the Trust lands. The Trust has entered into an agreement with Lake Mohonk, the adjoining resort, whereby guests at the hotel are allowed to use the Trust property in the same manner as members of the general public but without payment of any fee. Instead, the hotel itself pays the Trust an annual fee for extending this privilege to hotel guests. About 30,000 people enjoy the Trust lands each year, of whom approximately 15% are guests of the hotel.
 

 Prior to 1974, Trust lands located in Gardiner were listed as exempt property on the tax rolls. In that year, the town for the first time began assessing real property taxes against that portion of the Trust lands located within the town.
 
 [1]
 
 The Trust subsequently commenced these two proceedings, challenging the assessments for 1974 and 1975 in one and the assessment for 1976 in the second, on the ground that the land was entitled to an exemption. In the first proceeding, Supreme Court, Ulster County, concluded that the property was not entitled to an exemption because it was not used primarily for exempt purposes. In the second proceeding, Supreme Court, Ulster County, held that land owned by a trust is never entitled to an exemption pursuant to section 421 of the Real Property Tax Law because that section does not speak of trusts. The two proceedings were joined on appeal to the Appellate Division, and that court affirmed both judgments on the opinion at the Supreme Court in the first proceeding, over a dissent by one Justice. There must be a reversal.
 

 Section 421 (subd 1, par [a]) of the Real Property Tax Law provides an absolute exemption from real property tax for "[r]eal property owned by a corporation or association orga
 
 *482
 
 nized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes”.
 
 [2]
 
 To qualify for exemption under this statute, the property must be owned by a nonprofit "corporation or association” (see Real Property Tax Law, § 421, subd 1, pars [a], [d]), that corporation or association must be "organized or conducted exclusively” for one of the exempt purposes listed in the statute, and the land itself must be used "exclusively” for such purposes.
 

 The first issue presented on this appeal is whether a trust may be a "corporation or association” within the meaning of the statute, for if it cannot, property owned by a trust is never entitled to an exemption by this statute. The town contends that a trust is neither a corporation nor an association, and is thus not entitled to an exemption. We disagree. Whatever the meaning of the term "corporation or association” in another context, the phrase has long been understood in tax exemption statutes of this sort (see, e.g., L 1896, ch 908) simply to indicate that the particular organization granted the exemption need not be incorporated. Although the word "corporation” is strictly defined in the law, the word "association”
 
 *483
 
 is a broad term which may be used to include a wide assortment of differing organizational structures including trusts, depending on the context. Thus, in
 
 Matter of Graves
 
 (171 NY 40, 46-47), we interpreted a similarly worded statute granting a transfer tax exemption to "real property of a corporation or association organized exclusively” for certain public purposes, as providing such an exemption to property owned by a trust. Subsequently, in
 
 People ex rel. Untermyer v McGregor
 
 (295 NY 237, 244) we concluded that subdivision 6 of section 4 of the Tax Law, the immediate predecessor to section 421 of the Real Property Tax Law, did provide an exemption to lands owned by a trust. We see no reason to reach a different result today, and conclude that a trust is an association as that term is used in section 421.
 

 We turn now to the question whether the Mohonk Trust lands qualify for a tax exemption under the statute. Initially, we note that "while exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, an interpretation so literal and narrow that it defeats the exemption’s settled purpose is to be avoided. * * * Accordingly, 'exclusive’, as used in the context of these exemption statutes, has been held to connote 'principal’ or 'primary’. * * * Hence, purposes and uses merely auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption”
 
 (Matter of Association of Bar of City of N. Y. v Lewisohn,
 
 34 NY2d 143, 153).
 

 To determine whether a particular piece of land is exempt under the statute it is necessary to determine first whether the owner of the land is "organized or conducted” exclusively, or primarily, for an exempt purpose. If the answer to that inquiry is in the affirmative, it then becomes necessary to determine whether the particular land for which the exemption is sought is itself primarily used for an exempt purpose. Until very recently these two inquiries were always separate, for until 1971 an organization qualified for an exemption only if it was "organized” for an exempt purpose (see L 1971, ch 414, § 2). Under that statutory language the determination of an organization’s purpose was in large part limited to an examination of the documents by which it was created and which regulated its organizational structure and powers (see
 
 Matter of De Peyster,
 
 210 NY 216). Hence, it was irrelevant that a particular organization created under a broad charter or agreement providing both exempt and nonexempt purposes
 
 *484
 
 might in fact have limited its activities solely to exempt purposes. Now, however, an organization may be entitled to an exemption if it is either "organized
 
 or conducted”
 
 primarily for an exempt purpose or purposes. Hence, the determination of an organization’s primary purpose may turn upon the extent to which it pursues the various purposes for which it was created, and is not necessarily dependent solely upon the language of the document pursuant to which the organization operates.
 

 Applying these principles to the instant appeal, we first examine the agreement by which the Mohonk Trust was created. The primary purposes listed therein are "charitable, religious, scientific, literary, or educational”. Additionally, the agreement states a variety of subsidiary purposes centering around the welfare of the public. In fact, however, the Trust has deemed it best to attempt to fulfill its purposes primarily by the operation of the Trust lands in the manner described above and by means of its various related operations. Thus, in this case the use of the lands reflects the primary purpose of the organization. It is plain that the actual primary purpose of the Trust is the preservation of wilderness areas for the benefit of the public. Incidental to this use and this purpose are a variety of related activities, many of which are educational or scientific in nature. The question before us is whether such uses are for "religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes” (Real Property Tax Law, § 421, subd 1, par [a]). Clearly, the Trust land is not used for religious, hospital or cemetery purposes. We conclude that it is, however, used primarily for an assortment of "charitable * * * educational, [and] moral improvement of men, women or children” purposes, for we see no reason why these categories should not encompass lands used for environmental and conservation purposes which are necessary to the public good and which are open to and enjoyed by the public (see
 
 People ex rel. Untermyer v McGregor,
 
 295 NY 237,
 
 supra).
 

 It is, of course, within the power of the Legislature to establish and to modify tax exemptions, subject only to constitutional limitations. Thus, where the Legislature has chosen to create only limited exemptions for particular activities which might otherwise be deemed to fall within the somewhat broader absolute exemptions provided by section 421 (subd 1, par [a]), those distinctions must be given full effect by the
 
 *485
 
 courts (see
 
 Matter of American Bible Soc. v Lewisohn,
 
 40 NY2d 78;
 
 Matter of Swedenborg Foundation v Lewisohn,
 
 40 NY2d 87). As it is, however, the Legislature has not seen fit to remove environmental and conservation purposes from the broad category of charitable, educational, or mental or moral improvement of man purposes within which they so neatly fit. Hence, we conclude that such purposes are exempt and thus land used for such purposes by an exempt organization is not subject to the property tax.
 

 Finally, we reject the suggestion that simply because the Smiley family may receive some benefits by reason of the fact that their hotel is adjacent to the Trust property, the Trust thereby is converted into a commercial organization. The Trust itself is plainly a nonprofit organization which serves an essential public need. Hence, in the absence of any indication that the Trust is merely a device used to shield a profit-seeking enterprise, which is not the case here, the fact that nearby landowners in fact do benefit by the existence and operation of the Trust is irrelevant to its tax-exempt status.
 

 Accordingly, the order appealed from should be reversed, with costs, and the petitions should be granted.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order reversed, etc.
 

 [1]
 

 . We note that the Trust also owns land in New Paltz, Marbletown, Rosendale, and Rochester. It would appear, however, that those local governments consider the Trust property to be exempt, and it is only Gardiner which has assessed real property taxes against Trust lands.
 

 [2]
 

 . Section 421 (subd 1, par [a]) of the Real Property Tax Law implements and is, in part, mandated by section 1 of article XVI of the New York Constitution, which provides in pertinent part that "[e]xemptions may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit”. To this class of fundamental purposes entitled to an absolute tax exemption, the Legislature has added absolute exemptions for "hospital * * * moral or mental improvement of men, women or children or cemetery purposes”. (Real Property Tax Law, § 421, subd 1, par [a].)
 

 There also exists a form of "local option” exemption for land owned by nonprofit organizations organized or conducted for "bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes [or], for the enforcement of laws relating to children or animals” and which is used exclusively for such purposes (Real Property Tax Law, § 421, subd 1, par [b]). Unlike the exemptions provided by section 421 (subd 1, par [a]), the exemptions provided by section 421 (subd 1, par [b]) are not absolute and may be abrogated within a local governmental unit by enactment of an appropriate local law or ordinance (see
 
 Matter of American Bible Soc. v Lewisohn,
 
 40 NY2d 78, 84-85).
 

 The record in this appeal does not indicate whether the Town of Gardiner has adopted a local law abrogating any of the exemptions provided by section 421 (subd 1, par [b]). Nor have the parties contended that the Trust property might fall within one of the exemptions created by that section. Hence, we limit our discussion to a consideration of the applicability of section 421 (subd 1, par [a]) to the Trust lands.