*138
 
 OPINION OF THE COURT
 

 Gabrielli, J.
 

 This is a proceeding brought pursuant to article 7 of the Real Property Tax Law to challenge the assessment of real property taxes against certain land owned by petitioner and located within respondent City of Rye. Supreme Court, Westchester County, ruled in favor of petitioner and ordered that the property be removed from the tax rolls. The Appellate Division reversed the judgment of Supreme Court, concluding that the property is indeed subject to real property taxes. Petitioner now appeals to this court as of right, pursuant to CPLR 5601 (subd [a], par ii). For the reasons discussed below, the order appealed from must be reversed, and the matter remitted to the Appellate Division for review of the facts.
 

 Petitioner is a not-for-profit corporation organized pursuant to the laws of this State. It owns over six acres of land on North Manursing Island, which is a residential community located on Long Island Sound within the boundaries of the City of Rye. Half of the land is upland, whereas the remainder is tidal and underwater land. The property is maintained by petitioner in its natural state, and is allegedly being used as a wildlife sanctuary for birds and small animals. Petitioner contends that the land is exempt from real property taxes by section 421 (subd 1, par [a]) of the Real Property Tax Law, which in pertinent part provides an absolute exemption for "[r]eal property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes”.
 

 Respondents argued before the courts below that petitioner’s property is not entitled to a tax exemption for either of two reasons. First, respondents contended that the use of real property as a wildlife sanctuary does not constitute a charitable use exempt under the statute. Alternatively, respondents appear to have contended, albeit with some lack of clarity, that even if a bona fide wildlife sanctuary conducted by a legitimate nonprofit organization is exempt from taxation, the instant property nonetheless is not exempt because petitioner organization either is merely "a guise or pretense for directly or indirectly making any * * * pecuniary profit * * * 0r * * * [is] not in good faith organized or conducted exclusively for”
 
 *139
 
 an exempt purpose (Real Property Tax Law, § 421, subd 1, par [d]). In addition to responding to these arguments on the merits, petitioner also argued that the doctrine of
 
 res judicata
 
 precludes litigation of these issues because they have previously been resolved in a manner adverse to respondents in prior litigation between the parties. Supreme Court dealt with respondents’ arguments on the merits, and ruled that the property is entitled to an exemption pursuant to section 421 (subd 1, par [a]). The Appellate Division, however, held that the use of property as a wildlife sanctuary, without more, cannot constitute an exempt use, and accordingly reversed the judgment of Supreme Court without reaching the question whether petitioner is a bona fide nonprofit organization.
 

 We have recently held that section 421 (subd 1, par [a]) does provide an absolute exemption for real property used as a wildlife sanctuary by a charitable organization
 
 (Mohonk Trust v Board of Assessors,
 
 47 NY2d 476). Hence, the order of the Appellate Division must be reversed, for it was based on an erroneous interpretation of the statute. Since the Appellate Division did not consider respondents’ challenge to the validity of petitioner’s claim to be a qualified organization, however, we must remit the matter to that court for review of this essentially factual question. As there must be a remittal, we deem it appropriate to first discuss the factors which will be pertinent to that inquiry.
 

 Preliminarily, we note that in light of our decision in
 
 Mohonk Trust,
 
 there can be no question but that the purposes of petitioner, as stated in its certificate of incorporation and as limited by its activities in operating a wildlife sanctuary, are indeed exempt purposes. The certificate reads as follows: "The purposes for which the corporation is to be formed are: to secure, hold and develop land as a sanctuary for wild birds, including migratory species, and animals; to protect, preserve and promote the continuation of the species of wild birds and animals native to the section where this corporation shall exist; to promote their culture and to introduce and study new species of wild birds; to introduce and disseminate information concerning new species; and to restrict the killing or destruction of wild birds, and to provide a preserve for those presently existing”. These purposes are exempt purposes.
 

 Moreover, as is discussed in more detail below, if it is determined on remittal that the property is indeed being used as a wildlife sanctuary and that petitioner is a legitimate
 
 *140
 
 corporation organized or conducted for an exempt purpose, the property will be entitled to an exemption even if the surrounding landowners do in fact benefit from the mere existence and operation of the sanctuary. Similarly, the wisdom of locating a wildlife sanctuary on North Manursing Island and the need for such a sanctuary in that area are factors not normally pertinent to the tax-exempt status of the property, except insofar as they may be of some relevance in determining the legitimacy of the organizational purposes.
 

 For property to be entitled to an exemption on the ground that it is being used for a charitable purpose, it must a fortiori be used for a public purpose. For example, one may not establish a trust solely for the benefit of oneself and one’s family, and then obtain a tax exemption for property owned by such a trust by claiming that it is a charitable organization. While charity may begin at home, section 421 (subd 1, par [a]) provides an exemption only for charitable uses which benefit the public, not for so-called "charities” which benefit only their creators. Similarly, a wildlife sanctuary which is closed to members of the public, and which may be enjoyed only by those who contribute to its establishment and maintenance, is not entitled to a charitable exemption. This is not to say that a wildlife sanctuary must be completely open to the public in order to obtain a tax exemption, for restricted access to and use of a wildlife sanctuary is essential lest the sanctuary fail of its purpose. A distinction must be drawn, however, between limiting access to and use of a sanctuary to numbers of visitors and types of activities compatible with the nature of a sanctuary on the one hand, and excluding the putilic altogether or failing to encourage public access while allowing special or unrestricted privileges to the members of the organization on the other.
 

 In the instant case, there appears to be some question whether petitioner’s property is a wildlife sanctuary operated for the benefit of the public or whether it is in fact a private park maintained for the benefit of the landowners of North Manursing Island. Our examination of the record persuades us that it cannot be said as a matter of law that there was insufficient evidence to support the determination made by Supreme Court with respect to the public uses of the property. Nonetheless, a reviewing court could rationally conclude on the basis of this record that the decision of Supreme Court was against the weight of the evidence. That, however, is a
 
 *141
 
 question for the Appellate Division on remittal, for it may not now be answered by this court in light of our limited powers of review.
 

 We would note, however, that the fact, if it is a fact, that the residents of North Manursing Island regularly benefit from the operation of the wildlife sanctuary, does not mean that the property is not entitled to an exemption for this will in large part be true of any wildlife sanctuary founded by individuals who continue to reside or operate a business in the area
 
 (Mohonk Trust v Board of Assessors,
 
 47 NY2d 476, 485,
 
 supra).
 
 But the tax exemption must be denied if it appears that the primary beneficiaries are the individuals who founded and maintained the organization and that any purported public benefit is a mere pretext or token to shield what is essentially a private enclave from taxation.
 

 It has been suggested that the exemption provided wildlife sanctuaries by section 421 (subd 1, par [a]) may readily be abused either by landowners who seek to remove their land from the tax rolls while at the same time continuing to enjoy the benefits of such land, or by those who seek a "temporary” tax exemption until it becomes more profitable to develop the land. As to the first suggestion, there exists no bar to an exemption in such a case, as long as the title to the land has indeed been transferred to an organization organized or conducted for exempt purposes
 
 and
 
 the land is used for such a purpose to the benefit of the public. This argument is simply another version of that which we rejected in
 
 Mohonk Trust,
 
 namely, that exempt status should be denied because those who have donated property to an exempt organization continue to enjoy the same benefits afforded other members of the public who live in the vicinity of the land. It is based on the erroneous premise that the continued enjoyment of property, in common with other members of the public, by one who has donated that property to an exempt organization, in some way detracts from the benefit to the public. This, is simply not true, for as long as the property is owned by a nonprofit organization which serves an exempt public purpose and which uses the property to further that purpose, the requirements for an exemption are met. Section 421 (subd 1, par [a]) is intended to encourage the dedication of property for certain specified public purposes, and the fact that the donor of such property continues to enjoy some benefit resulting from the use of the property by the charitable organization is irrelevant to its tax-
 
 *142
 
 exempt status so long as that benefit is one actually shared with the public and does not result from some continued special connection between the organization and the donor.
 

 As to the suggestion that the exemption provided wildlife sanctuaries by section 421 (subd 1, par [a]) will in some way encourage "temporary” tax exemptions for land which is in actuality simply being kept from the market by a private interest until its value increases, this fear is illusory. For the land to be entitled to an exemption, it must first be transferred to a charitable organization. Once the land is owned by an exempt organization, the property must be used to further the exempt purposes of that organization. If the organizational structure permitted some other result, the organization would simply not be entitled to an exemption by section 421 (subd 1, par [a]) in the first place (see Real Property Tax Law, § 421, subd 1, par [d]; see, also, Not-For-Profit Corporation Law, § 204; EPTL art 8). Similarly, when such an organization is dissolved, the disposition of its assets is strictly regulated by law to prevent the misapplication of property held for an exempt purpose (see Not-For-Profit Corporation Law, § 1005, subd [a], par [3]; EPTL 8-1.4). In short, there exist abundant legal impediments to the type of fraud which might otherwise permeate this sort of tax exemption.
 

 One final issue commands our attention. Petitioner contends that in light of prior litigation between it and respondents as to the tax-exempt status of the property in 1967, this proceeding should be barred by the doctrine of
 
 res judicata.
 
 We reject that suggestion. In the prior litigation, as here, the city contended both that a wildlife sanctuary was not an exempt purpose, and that the property was not in fact being used as a public wildlife sanctuary. Following protractéd litigation, both of these contentions were rejected and no appeal was taken from the Supreme Court decision finally terminating that proceeding. While it might at first appear that this prior litigation necessarily resolved the issues presented in this dispute, closer examination of the situation persuades us that this is not so. Insofar as the prior dispute determined that a wildlife sanctuary is an exempt use, that decision was based upon an earlier version of section 421 of the Real Property Tax Law, which provided an absolute exemption for certain land uses which are now afforded merely a conditional exemption that may be removed by local law or ordinance (compare Real Property Tax Law, § 421, subd
 
 *143
 
 1, pars [a], [b], with L 1965, ch 1063, § 1). The City of Rye has adopted just such a local law. Hence, the determination that the property was exempt under the prior law does not mandate the conclusion that it is absolutely exempted by the present statute (see
 
 Matter of American Bible Soc. v Lewisohn,
 
 40 NY2d 78, 83-84). Accordingly, examination of this issue was not foreclosed by the doctrine of
 
 res judicata.
 
 As to the claim that petitioner is not functioning as a legitimate nonprofit organization, the determination in the prior litigation was necessarily limited to the manner in which petitioner was organized and conducting its affairs in 1967, shortly after it was first incorporated. Hence, it does not bar inquiry into the present use of the property and the manner in which petitioner currently conducts its affairs.
 

 Accordingly, the order appealed from should be reversed, with costs, and the matter remitted to the Appellate Division for a review of the facts.
 

 Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order reversed, with costs, and the matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.