Chief Judge Cooke
(dissenting). The majority today holds that a corporation organized and conducted solely to aid an *135 exempt corporation is itself entitled to an exemption under the Real Property Tax Law. Because this action contravenes the well-recognized concerns of the Legislature and the language of the statute itself, I must dissent.
Petitioner, a Type B not-for-profit corporation set up by St. Joseph’s Hospital Health Center in 1972, seeks an exemption under section 421 (subd 1, par [a]) of the Real Property Tax Law. The corporation owns properties in the Syracuse area, which it rents at low cost to personnel associated with the Hospital. There is no question that the petitioner operates solely for the benefit of the Hospital and is under the effective control of the Hospital. The president of the Hospital selects the corporation’s directors and the Hospital pays the corporation’s maintenance and utility costs and receives any excess revenues. Petitioner argues that because its corporate purposes aid the Hospital, which is undeniably entitled to an exemption under section 421, it also should receive such an exemption. In light of the clear legislative direction to the contrary, however, this court should not read such a "piggyback” exemption into the statute.
Under section 421 (subd 1, par [a]), a corporation seeking an exemption must show that it is "organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes * * * and used exclusively for carrying out thereupon one or more of such purposes”.
Petitioner corporation does not assert that it could fulfill the purposes of a hospital itself. The issue is rather whether the corporation, created to assist the Hospital in performing its purposes, can itself be construed as "conducted exclusively for * * * hospital * * * purposes”. The words "or conducted” were added to section 421 (subd 1, par [a]) in 1971, at the same time that the Legislature cut back on the categories of unconditional exemptions under the section and gave municipalities broad power to eliminate other categories of such exemptions. In Mohonk Trust v Board of Assessors of Town of Gardiner (47 NY2d 476), this court analyzed the impact of this addition. It noted (at pp 483-484) that "until 1971 an organization qualified for an exemption only if it was 'organized’ for an exempt purpose (see L 1971, ch 414, § 2). Under that statutory language the determination of an organization’s purpose was in large part limited to an examination of the documents by which it was created and which regulated its organizational *136 structure and powers (see Matter of De Peyster, 210 NY 216). Hence, it was irrelevant that a particular organization created under a broad charter or agreement providing both exempt and nonexempt purposes might in fact have limited its activities solely to exempt purposes. Now, however, an organization may be entitled to an exemption if it is either 'organized or conducted’ primarily for an exempt purpose or purposes. Hence, the determination of an organization’s primary purpose may turn upon the extent to which it pursues the-various purposes for which it was created, and is not necessarily dependent solely upon the language of the document pursuant to which the organization operates” (emphasis in original).
A wide variety of corporate purposes qualified for exemptions before the Legislature cut them back in 1971. By simultaneously adding the words "or conducted”, as Mohonk Trust noted, the Legislature permitted examination of which stated purposes a corporation was actually implementing where the certificate of incorporation or by-laws included both exempt and nonexempt purposes. Both before and after the 1971 amendments, however, the statute distinguished this inquiry from the separate and additional requirement that the property be actually used for a tax exempt purpose. This court has long recognized the dual nature of this test, that "[bjefore nonprofit real property may be exempt from taxes, petitioner must establish that it is (1) organized or conducted exclusively for one or more exempt purposes specified in the statute and (2) used exclusively for such exempt purposes (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143; Matter of Genesee Hosp. v Wagner, 47 AD2d 37, 43, affd 39 NY2d 863)” (Matter of Presbyterian Residence Center Corp. v Wagner, 66 AD2d 998, 999, affd 48 NY2d 885). The majority today overlooks the requirement that the corporation be organized or conducted for an exempt purpose and instead focuses solely on the requirement that the corporation’s property be used for an exempt purpose. It applies only half of the statute’s test for exempt status.
When the full two-part test of section 421 (subd 1, par [a]) is applied to this case, it is clear that petitioner is not entitled to an exemption. The purposes for which it was organized or conducted, either those stated in its corporate papers or those stated purposes that it has actually implemented, are not those of a hospital. Petitioner could not legally operate or conduct a hospital. Petitioner thus fails this portion of the *137 test, regardless of whether its property is actually used to further the purposes of a hospital corporation.
Petitioner cannot dispute that it was organized primarily and is conducted solely for the purpose of owning, operating and managing real property. Unable to meet the statute’s requirements, it would have this court usurp the Legislature’s function and amend the section to permit it to ride on the exempt shoulders of the Hospital. If the Hospital itself owned the properties in question there would of course be no doubt as to their exempt status (Matter of St. Luke’s Hosp. v Boyland, 12 NY2d 135).* But the properties are owned by a separate corporation, and section 421 (subd 1, par [a]) requires that either the purposes for which such corporation is organized or those stated purposes to which it actually gives effect must fall into one of the exempt categories in paragraph (a). Aiding another corporation that does qualify for the exemption is not one of the purposes listed in paragraph (a), and this court would do violence to the statute if it were to read it into the section.
As this court has already asserted, the prime purpose behind the 1971 amendments was to stem the steadily increasing flow of property from municipal tax rolls (e.g., Association of Bar, supra, at p 155; Matter of American Bible Soc. v Lewisohn, 40 NY2d 78, 86). The joint legislative committee whose recommendations formed the basis for the amendments estimated that more than 30% of the real property in the State was tax exempt and that unless action was taken that figure would rise to 50% by 1985 (NY Legis Doc, 1970, No. 15). The Legislature then acted to give municipalities greater leeway to cut back on such exemptions. This is not to argue that the motives for which petitioner corporation was created are in any way unworthy. The Legislature might very well decide in the future that a corporation one step removed from the exempt purposes of the statute should be allowed an *138 exemption. But in light of the Legislature’s concern over the impact of exemptions on municipal tax rolls, as well as the traditional maxim that exemption statutes should be construed strictly against the party seeking the exemption, this court should not take it upon itself to make such a policy determination.
It remains to distinguish two Appellate Division opinions relied upon by petitioner, Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey (35 AD2d 161, affd 29 NY2d 621) and Matter of Beth Israel Hosp. Housing Co. (Catherwood) (35 AD2d 397). In each case, the Appellate Division countenanced exemptions in situations similar in many respects to the case at hand. This court, however, has never expressly adopted the reasoning of these decisions. The court never passed on Beth Israel, and it affirmed Faculty-Student Association, without opinion. Significantly, the cases were decided by the Appellate Division in 1970, before the Legislature reversed a trend of many years and moved to curtail the expansion of real property tax exemptions. In light of the detailed discussion that this court has subsequently given to the Legislature’s motivation in enacting the 1971 amendments, these cases are of questionable applicability to the current situation. They certainly do not provide a strong enough base to allow this court to rewrite the Legislature’s handiwork in such a sensitive area.
From time immemorial, real property tax exemption statutes have been construed rigidly against parties claiming exemptions. Exemptions have been denied unless the statutory language was clear and unambiguous and unless the intention of the Legislature to grant the exemption indisputably appeared. Any doubt should be resolved in favor of the taxing authority. (See Town of Harrison v County of Westchester, 34 Misc 2d 1020, 1033 [Hoyt, J.], affd 18 AD2d 1136, affd 13 NY2d 258.)
Property tax exemptions have the direct effect of shifting the burden of who must pay for municipal services. Simple arithmetic dictates that when one parcel is removed from the tax rolls, all other taxpayers — businesses, nonexempt nonprofit organizations, homeowners — must pay an increased share. The Legislature was aware of this in 1971 when, in the same act that amended the statute involved here, it declared that "the continuous removal from the tax rolls of taxable real property, is a particular hardship on the local govern *139 ments of this state and upon the citizens of this state” (L 1971, ch 414, § 1). Certainly there are many organizations that should receive exemptions. The fact that the Legislature has granted the exemptions that it has testifies to this. But in these days when municipalities are already hard pressed and requests for tax exemptions are mushrooming, this court should not take it upon itself to alter the scheme established by the Legislature.
The order of the Appellate Division should be reversed.
Judges Gabrielli, Wachtler and Fuchsberg concur with Judge Meyer; Chief Judge Cooke dissents and votes to reverse in a separate opinion in which Judges Jasen and Jones concur.
Order affirmed.

 St. Luke’s did not hold that owning and operating living quarters for hospital personnel was a hospital "purpose” under section 421 (subd 1, par [a]). In St. Luke’s, the hospital corporation, which unquestionably met the "purposes” test of the section, owned the apartment house itself. The court focused on the second branch of the test, involving the actual "use” to which those buildings were put, and found that those portions of the apartment buildings used to house hospital personnel were entitled to exemptions (12 NY2d, at p 143). The court thus found an exemption in order only where both the "purpose” and "use” branches of the test had been met. Its holding cannot be used to support the merger of those two distinct concepts to broaden the statute’s grounds for exemption.