OPINION OF THE COURT
Seymour Schwartz, J.
Petitioner, the American Society for the Prevention of Cruelty to Animals (ASPCA), has initiated this proceeding pursuant to article 7 of the Real Property Tax Law to remove its real property from the tax rolls of the City of New York and to enjoin the city from collecting real estate taxes on its real property for the tax year 1980/1981. This is the first time in petitioner’s 114-year history that the City of New York has sought to impose a real estate property tax on its real estate.
The ASPCA was organized in 1866 by a special legislative act providing for its incorporation. The purposes were set forth in the by-laws of the corporation: “to provide effective means for the prevention of cruelty to animals throughout the United States.” In its early years the ASPCA dealt primarily with cruelty to horses but as the internal combustion engine replaced the horse in transportation it expanded and diversified its interests and activities.
On March 7, 1972 the ASPCA filed a restated certificate of incorporation pursuant to section 201 of the Not-For-Profit Corporation Law making it a type B not-for-profit *428 corporation for the prevention of cruelty to animals. Its purposes are:
“The Society shall be organized and conducted as a Type B not-for-profit corporation, exclusively for charitable and educational purposes and for the purpose of prevention of cruelty to animals within the meaning of Section 201 (b) of the N-PCL and Sections 501(c) (3) and 170(c) (2) (B) of the Internal Revenue Code of 1954, as amended (hereinafter, the ‘Code’). More particularly, the objects of the Society shall be
“(a) to develop, provide and maintain services and facilities for promoting the welfare of animals and the prevention of unnecessary sickness and suffering, including the organization, equipment and maintenance of animal shelters and of a place or places where medical, surgical and other care and treatment for animals will be provided;
“(b) to promote measures for developing the general appreciation and practice of humanity to any kind of animals; and
“(c) to perform all acts committed by general or special Acts of the Legislature of the State of New York to the Society and other activities permitted by law to humane societies, animal protective societies and societies for the prevention of cruelty to animals generally.”
At present the ASPCA deals mainly with dogs. It arranges to pick up ahd care for unwanted and stray animals, accepts animals from people no longer able to care for them, returns lost animals to their owners, finds homes for animals, operates ambulances on a 24-hour basis, spays and neuters animals, practices humane euthanasia on animals for whom homes cannot be found, operates an animal hospital and has contracted with the city on a nonprofit basis in the interest of public health to increase its pick-up, shelter and care for stray animals.
For more than a century the society has deservedly enjoyed a sterling reputation for its unceasing humane activities on behalf of animals. It has six broad areas of activities: (1) a licensing department to enforce the New York State Dog License Law and the laws that affect animals in New York City; (2) a department for humane *429 education which provides information and instruction to school children principally in New York City and to people throughout the country through various publications; (3) an animal port at Kennedy Airport to provide for animals . in transit; (4) a department of shelters which provides havens for animals in each of the city’s five boroughs; (5) a department of humane law enforcement to provide counsel and enforcement of city, State and Federal laws applicable to animal treatment and (6) a Manhattan hospital facility to provide medical care for shelter animals, animals brought there by government agencies for holding purposes and animals brought in by the public.
The most recent available annual report, 1979, shows that funding for the ASPCA comes from the following sources: charitable contributions (which are tax deductible), 13.7%; fees, 18.9%; interest and dividends, 6.1%; dog licenses fees, 40%; City of New York, 19.6% and miscellaneous (royalties, horse show fees, etc.), 1.7%
Forty per cent of the ASPCA’s budget is financed by its authorization to collect dog license fees. Of the $8.50 fee, $8.40 goes to the society and 10 cents to the Commissioner of Agriculture and Markets of New York State.
In 1979 the ASPCA apportioned its resources as follows: (1) The shelter department which handled 102,045 animals, received 58.3% of its budget, 56.4% floor space and was allotted 66% of its employees; (2) The license department handled 267,741 dogs, received 13.7% of its budget, 11.2% floor space and was allotted 14.2% of its employees; (3) The animal hospital received 14.4% of its budget, 11.9% floor space and was allotted 8.4% of its employees; (4) Law enforcement received 6.9% of its budget, 3.3% floor space and was allotted 5.9% of its employees; (5) Animal port received 3.6% of its budget, 10.6% floor space and was allotted 3.7% of its employees; and (6) Education department received 3% of its budget, 6.6% floor space and was allotted 1.8% of its employees.
During the years 1970-1980 the ASPCA averaged a loss of $500,000 each year. In 1979 it sustained a loss of $942,302 and each of its six divisions showed a deficit.
The City of New York does not contest these facts but asserts that nevertheless under section 421 of the Real *430 Property Tax Law, the ASPCA is not exempt from real estate taxes.
“1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.
“(b) Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, either by the owning corporation or association, or by another such corporation or association as hereinafter provided, shall be exempt from taxation; provided, however, that such property shall be taxable by any municipal corporation within which it is located if the governing board of such municipal corporation, after public hearing, adopts a local law, ordinance or resolution so providing. None of the following subdivisions of this section providing that certain properties shall be exempt under circumstances or conditions set forth in such subdivisions shall exempt such property from taxation by a municipal corporation whose governing board has adopted a local law, ordinance or resolution providing that such property shall be taxable pursuant to this paragraph (b).”
Section 421 (subd 1, par [b]) was added in 1971 and in its findings and intent the Legislature set forth (L 1971, ch 414, § 1) the important policy considerations underlying its adoption: “The legislature finds that competent studies indicate that real property in this state, having an assessed *431 valuation in excess of twenty-two billion dollars, is exempt from and free from the payment of real property taxes; that this sum constitutes approximately thirty per centum of the total assessed valuation of real property in this state. That of this sum over sixteen billion dollars is in the City of New York and constitutes approximately one-third of the total assessed valuation of real property in such city. The legislature further finds, that the continuous removal from the tax rolls of taxable real property, is a particular hardship on the local governments of this state * * * who are increasingly burdened by additional taxes, whenever such tax exemptions reduce the tax base, as a means of raising revenue for the conduct of government.”
The change effected in section 421 of the Real Property Tax Law was significant. Exemption was divided into two categories. The first, section 421 (subd 1, par [a]), continued exclusively charitable purposes as absolutely exempt. The second, section 421 (subd 1, par [b]), set forth as nonexempt a corporation organized exclusively for the enforcement of laws relating to animals if a municipal corporation adopted such a local law. New York City elected to pass section J51-3.0 of the Administrative Code of City of New York tracking section 421 (subd 1, par [b]) of the Real Property Tax Law, thereby placing many formerly tax-exempt properties on the tax roll: “§ J51-3.0 Taxation of property of non-profit organizations, pharmaceutical societies and dental societies. — 1. Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational or cemetery purposes or for two or more such purposes, but which is organized or conducted exclusively for the moral and mental improvement of men and women or for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * shall be taxable.”
Clearly, the Legislature and the New York City Council had the ASPCA in mind when they passed this legislation. *432 Societies for the prevention of cruelty to animals have been organized in some counties within the State and have law enforcement powers. In New York City only petitioner is empowered to license dogs.
The issues to be determined then are whether petitioner comes within the definition of a corporation organized or conducted “exclusively * * * for the enforcement of laws relating to * * * animals” and whether it is exempt under the Constitution of the State of New York as charitable in any event.
Section 1 of article XVI of the Constitution of the State of New York reads in part: “Exemptions from taxation may be granted only by general laws. Exemptions may be altered or repealed except those exempting real or personal property used exclusively for religious, educational or charitable purposes as defined by law and owned by any corporation or association organized or conducted exclusively for one or more of such purposes and not operating for profit.”
The Court of Appeals has held that the burden of proving nonexemption is on the city “under [Real Property Tax Law, § 421, subd 1, par (b)] the taxing authority must prove not only that the corporate owner is organized exclusively for bible and tract purposes, but as well that it is not organized or conducted exclusively for religious purposes.” (Matter of Watchtower Bible & Tract Soc. of N. Y. v Lewisohn, 35 NY2d 92, 97; emphasis in original.)
The term “exclusively” used in the Constitution of the State of New York and section 421 of the Real Property Tax Law has been held to mean “principally” or “primarily”. (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143; Mohonk Trust v Board of Assessors of Town of Gardiner, 47 NY2d 476.)
The City of New York has transferred its police and licensing function regarding animals to the ASPCA. The arrangement goes back more than a hundred years and it is the only city in the United States to have done so. It has proved wise to hand over this emotion-laden area of the police function — the humane treatment of animals — to a volunteer group with a demonstrable interest, expertise *433 and no thought of private gain. The result has been a more efficient, committed administration of humane animal laws with considerable savings to the taxpayer. To make this financially feasible it was necessary to allow dog licensing fees to go primarily to the ASPCA.
Respondent cites Mohonk Trust v Gardiner (supra, pp 484-485) in support of its central argument that the Legislature has the power to remove the ASPCA from the charitable category: “It is, of course, within the powers of the Legislature to establish and to modify tax exemptions, subject only to constitutional limitations. Thus, where the Legislature has chosen to create only limited exemptions for particular activities which might otherwise be deemed to fall within the somewhat broader absolute exemptions provided by section 421 (subd 1, par [a]), those distinctions must be given full effect by the courts (see Matter of American Bible Soc. v Lewisohn, 40 NY2d 78; Matter of Swedenborg Foundation v Lewisohn, 40 NY2d 87).” The City Council of the City of New York has chosen to place the ASPCA on the tax rolls.
A review of the six different categories of activities conducted by the ASPCA demonstrates that it is not principally or primarily engaged in law enforcement activities. The department for humane education, the animal port at Kennedy Airport, the department of shelters and the hospital facility take 79.3% of expenditures, 85.5% of its floor space and is allotted 79.9% of its employees. While the Legislature and the City of New York may have intended to remove the ASPCA’s tax exemption, it may only do so if it can demonstrate that the society is primarily in animal law enforcement. The evidence does not sustain this assertion and the ASPCA remains tax exempt as exclusively charitable pursuant to section 421 (subd 1, par [a]) of the Real Property Tax Law.
Normally a claim to constitutional protection by a party will not be decided if the dispute is disposed of by analysis of a particular statute which results in the relief sought by that party. Recognizing the importance of the issue before the court and the possibility that a higher court may overturn this court’s evidentiary findings and statutory *434 interpretation, the court will address the constitutional issue.
The term “charitable” is not defined by the Constitution or by general statutory language. Case law has encouraged a flexible definition. It has been stated that “ ‘a charitable use * * * may be applied to almost any thing that tends to promote the well-doing and well-being of social man.’” (Matter of Rockefeller, 177 App Div 786, 791.) It has been suggested that the reason for this broad definition is that it is unwise to bind courts to a rigid formula. (Bogert, Trusts and Trustees [rev 2d ed, 1977], § 369; Neuschwander & Moore, Taxation: Charitable Property Tax Exemption, 13 Washburn LJ 161; 8 Hofstra L Rev 451, 457, 468.)
The determination that activities on behalf of animals are charitable has a long and consistent history. A wildlife sanctuary has been held to be charitable (Matter of North Manursing Wildlife Sanctuary [City of Rye], 48 NY2d 135, 139), as is the preservation of wilderness, including the maintenance of animal life. (Mohonk Trust v Board of Assessors of Town of Gardiner, supra.) Two cases have held the ASPCA charitable. (Matter of Hamilton, 100 Misc 72, affd without opn 185 App Div 936; American Soc. For Prevention of Cruelty to Animals v Geiger, 208 Misc 29.) A trust for the founding and maintenance of a home or hospital for animals has been held a charitable use. (Matter of Hamilton, 185 Misc 660, affd 270 App Div 634, affd 296 NY 578.) Concern for those of the animal kingdom has long been regarded as charitable in nature. (Matter of Hill, 45 Misc 2d 36.) The Constitution of the State of New York adopted in 1938 intended to have the word charitable encompass organizations like the ASPCA which perform governmental functions by discharging social obligations which the State would otherwise have to assume, thereby lessening the burdens of taxation. The report of the Committee on Taxation to the State of New York Constitutional Convention of 1938 (Document No. 2, p 2) provides: “Your committee believes that the legislative power with respect to exemptions from taxation should be circumscribed in order to avoid the resultant increased burden upon taxable property. Therefore it deemed it wise to provide for the granting of exemptions by general laws *435 which may be altered or repealed except as to property used exclusively for religious, educational or charitable purposes and owned by organizations conducted exclusively for one or more of such purposes and not operating for profit. These corporations are discharging social obligations which the State would otherwise have to assume and are reasonably entitled to constitutional protection in the exemptions granted to them with respect to that property essential to the operation and maintenance of their work.”
In Sherman v Richmond Hose Co. No. 2 (230 NY 462, at p 468), the Court of Appeals held: “[A] charitable use is not confined to the relief of the poor or to the assistance of learning and religion, but includes the advancement of objects of general public utility. Thus a trust that tends to reduce taxation and lessen the burdens of government was a charitable use.”
The ASPCA is an organization with a consistent record of approval by the court, clearly considered charitable by the public and is constitutionally protected from being shunted into a different classification to make it amenable to real estate taxes. Boundaries of the charity concept may shift and take form and definition from context allowing the Legislature to cast off novel, peripheral or ambiguous activities from charitable status. But unanimous legal and public acknowledgment may not be disregarded by the Legislature if the charitable concept is to retain its core and its constitutional protection remain inviolate.
The petition is granted. The properties of petitioner are removed from the tax rolls of the City of New York for the year 1980/1981 and the city is enjoined fom collecting real estate tax on the ASPCA’s real property for that tax year.