OPINION OF THE COURT
Andrew V. Siracuse, J.
The Gay Alliance of Genesee Valley, Inc. (GAGV) is a nonprofit membership organization devoted both to the needs of the homosexual community in the Rochester area and to furthering the understanding and acceptance of that community by the public as a whole. In March 1990, the GAGV purchased a building to house its offices and activities. It applied to the City of Rochester for a property tax exemption under Real Property Tax Law § 420-a. The City’s rejection of that application is without foundation in law and can only be explained by the nature of the GAGV’s membership and focus. It thus constitutes a violation of the GAGV’s Federal constitutional rights to equal protection and renders the City liable for attorneys’ fees under 42 USC § 1988. In addition, the City’s last-minute discovery demands are so clearly frivolous that this court orders a hearing on possible sanctions under 22 NYCRR 130-1.1.[1]
FACTS
The Gay Alliance of Genesee Valley has among its purposes "the eradication of homophobia, the delivery of unbiased health care, employment protection, social integration, full legal rights and protection, [and] personal and financial security for all” (GAGV By-laws and Const, preamble). In furtherance of these aims it seeks to research and advance gay liberation and equal rights for persons of homosexual orientation, improve such people’s quality of life and create a physical focus for the gay and lesbian community. It also furnishes advice and assistance for those discriminated against on the *129 basis of sexual orientation, and educates the larger public about the civil rights of gay and lesbian citizens (GAGV Certificate of Incorporation). Its activities include regular social and educational programs, a free newspaper, a speakers’ bureau and a telephone hotline. Among its responses to the AIDS crisis are a series of safe sex workshops and support for survivors of those who have died of AIDS.
The GAGV was granted exemption from Federal taxation on November 19, 1981, but the property tax question did not arise until it purchased a headquarters building on Atlantic Avenue in the City of Rochester, in March 1990. On January 28, 1991, it applied to the City for a tax exemption under Real Property Tax Law § 420-a. Given a choice on the application of checking "Religious”, "Charitable”, "Hospital”, "Educational”, or "Moral or mental improvement of men, women or children”, it chose "Educational” as its purpose.
On March 8, 1991, the City Assessor denied the application. The rejection letter enclosed a memorandum stating that educational exemptions were limited to applicants which "conduct organized instructional programs, with a curriculum, classes, and a faculty.”
The GAGV brought an administrative appeal on March 22, 1991. In preparation for the decision, the municipal attorney wrote another memorandum maintaining now that there was a distinction between education and advocacy. In the Matter of Symphony Space v Tishelman case (60 NY2d 33, cited by the GAGV) an informal, nondegree-granting institution was held to have an educational purpose. Once "learning is instigated by the teacher” however, the institution was no longer educational but advocacy-oriented; although the Alliance’s activities "are informative and probably beneficial”, "because those activities are driven by a specific point of view, a mission, a goal, a desire to cause social change, rather than a neutral and disinterested offering of knowledge for its own sake, the Gay Alliance does not * * * qualify for tax exemption.”
On August 24, 1991 (after an indirect rejection of its application), the GAGV brought the present action. On October 15, 1992, the GAGV moved to amend its complaint to add a cause of action under the Federal Civil Rights Act (42 USC § 1983) and a consequent claim for attorneys’ fees under 42 USC § 1988. At the same time, the GAGV moved for summary judgment.
*130 The City cross-moved for summary judgment dismissing the complaint on November 12, 1992. On December 1, 1992, this court denied both motions without prejudice to renew and returned the matter to the City for an explicit ruling on the GAGV’s administrative complaint. That ruling, which was dated December 31, 1992, rejected the application without explanation.
The GAGV then renewed its motion to amend the complaint. At oral argument, on February 18, 1993, the City conceded that no further factual submissions were required, at least insofar as the property tax issue was concerned. By a decision dated February 19, 1993, subsequently converted into an order and entered February 26, 1993, this court granted the GAGV’s motion, rejecting the City’s argument that it could only be liable under 42 USC § 1983 for acts pursuant to official policy or custom. The City was duly served with the amended complaint.
The present decision arises from the Alliance’s two motions of March 23, 1993, one for a protective order under CPLR 3103[2] and the other for summary judgment. The two motions will be considered in that order. In addition, the City, in papers filed literally at the last minute under CPLR 2214, has renewed its cross motion for summary judgment.
GAGV’S ENTITLEMENT TO AN EXEMPTION UNDER RPTL 420-a
The City has conceded in earlier proceedings that the GAGV is a bona fide nonprofit organization that does work in the public interest. The only point on which the litigants part company is the interpretation of Real Property Tax Law § 420-a (1) (a).
That section sets out a legislative policy that certain property is entitled, as a matter of law, to exemption from taxation. Unlike property described in the permissive sections of the Real Property Tax Law, property that meets the test set out in section 420-a must be exempt. The City’s references at oral argument to the tax burden placed on less affluent homeowners and to the GAGV’s healthy financial status are not relevant to the issues before the court.
The section reads, in pertinent part: "Real property owned *131 by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes * * * shall be exempt from taxation” (Real Property Tax Law § 420-a [1] [a]). For the purposes of this action the relevant categories are charitable, educational and moral or mental improvement.
The City interprets this statute as setting out a series of discrete categories. An educational organization must provide organized instruction or disseminate knowledge upon the request of the learner. A charitable organization "provides a necessary commodity or service to needy persons” (mem, at 8). The final category, organizations promoting the moral or mental improvement of men, women or children, is restricted to groups like the YMCA, for whose benefit the language was added by L 1893 (ch 498).
The City maintains that the GAGV conducts no classes and expresses a viewpoint, thus failing to qualify as "educational”; it distributes no funds to the needy, unlike the neighborhood advocacy groups cited by the GAGV in its papers, and is thus not "charitable”; and it is not similar in any way to the YMCA, so cannot qualify as contributing to the "moral and mental improvement” of the public.
This argument is fallacious. It is inconsistent with the statute’s language, which exempts groups organized or conducted "for two or more * * * purposes”, and has repeatedly been rejected by the Court of Appeals in cases which the City itself cites and consistently mischaracterizes. The City interprets Matter of Symphony Space v Tishelman (60 NY2d 33, supra) as extending the concept of "education” to include the peculiar needs of performing arts instruction. There is no language in the case amenable to such an interpretation. The Court of Appeals, in fact, explicitly addressed the very argument made by the City: "In contrast with the approach taken by this court, Trial Term, in the present case, has taken a narrow and fragmentary view of the exemption. In rejecting petitioner’s argument that it was organized for educational purposes, the court focused on the fact that Symphony Space was not approved by the Commissioner of Education, was not chartered by the Board of Regents, and does not have faculty or student enrollment. The court similarly rejected the exemption under the 'moral or mental improvement’ category, rea *132 saning that the exemption is meant to cover only YMCA types of organizations and was not intended to cover the performing arts. However, this court has not made such requirements necessary before an institution qualifies for a tax exemption under those categories * * * In fact, rather than dissecting each exempt purpose, this court has indicated that the statute may encompass property used primarily for various and varied charitable and educational purposes and the moral or mental improvement of the citizenry ” (supra, 60 NY2d, at 37; emphasis added). Even if Symphony Space might be shoehorned into the educational category — an attempt not sanctioned by the Court of Appeals words — the City’s interpretation of the statute would be inconsistent with the earlier Court of Appeals decision in Mohonk Trust v Board of Assessors (47 NY2d 476), cited with approval in Symphony Space. The property at issue in Mohonk Trust was a wilderness reservation owned by a private trust. The Court had no difficulty finding that the Trust land was "used primarily for an assortment of 'charitable * * * educational, [and] moral improvement of men, women or children’purposes” (supra, 47 NY2d, at 484; emphasis added). Yet no wilderness area could qualify under the City’s "fragmentary” set of tests: no classes are held therein, no funds or goods are distributed by it to the needy, and there is no similarity between it and the YMCA.
This does not end the inquiry, however, for the burden is on the taxpayer to demonstrate entitlement to the exemption (see, Matter of New York Botanical Garden v Assessors of Town of Washington, 55 NY2d 328; Matter of Nassau County Council Boy Scouts v Board of Assessors, 84 AD2d 862), and the statutory requirements should be construed strictly against the taxpayer, although "an interpretation so literal and narrow that it defeats the exemption’s settled purpose is to be avoided” (Matter of Symphony Space v Tishelman, 60 NY2d 33, 36, supra). Regardless of the weakness of the City’s argument, the GAGV has the burden of proof.
Similar organizations in New York City and Albany have received exemptions from property taxation, and while these decisions admittedly have no binding authority they suggest that the GAGV falls within the "educational, charitable, and moral or mental improvement” categories of section 420-a as understood in the light of the Symphony Space and Mohonk Trust cases (supra). To the extent the GAGV is an advocacy group, as charged by the City, it advocates not homosexuality but the legitimate rights and needs of the gay and lesbian *133 community, rights recognized by the City in its antidiscrimination ordinance. This is essentially an educational function. These activities also serve to build tolerance and understanding between that community and the larger public, contributing to the moral and mental improvement of the entire community. The GAGV’s AIDS-related work is also educational, on a topic of pressing importance to all. The telephone hotline and the outreach and support programs for gay and lesbian youth and minorities meet similar needs and, along with the AIDS-related programs, furnish important social services that might otherwise have to be met, if at all, through tax-funded social welfare agencies.
That certain of the GAGV’s activities are clearly social or recreational does not defeat its claim, for it is well settled that "exclusive” means, in the context of the statute, "principal” or "primary” (Mohonk Trust v Board of Assessors, 47 NY2d 476, 483, supra; Matter of Nassau County Council Boy Scouts v Board of Assessors, 84 AD2d 862, supra). The principal or primary purpose of the GAGV is to build understanding, eliminate discrimination, and provide counselling and support. That similar activities fall within the exempt categories has been recognized by the City in granting exemptions to neighborhood advocacy organizations. Group 14621, Inc., for example, is exempt; it seeks, inter alla,
"(a) To further the interests of the inhabitants [of the 14621 neighborhood] * * *
"(c) To promote fellowship and social intercourse among the members * * * [and]
"(e) To promote and encourage laws for the protection of the inhabitants of the area.”
The 19th Ward Community Association is also exempt; its stated purposes include:
"(1) To create a conscious multi-racial community where individual and cultural differences are not only tolerated but celebrated, and where people share a sense of community; [and]
"(2) To insure that the community, through the Association, determines and receives the kinds of high quality services it needs from public and private institutions.”
The City claims that these organizations are exempt because they receive government funds to administer programs benefitting low-income residents, and are thus charitable. This *134 argument is not a strong one, as the announced purposes of both groups show that administering programs addressed to the needy is neither a primary nor a principal purpose of either one.[3] In addition, the GAGV itself has received government grants in support of some of its programs, many of which contain a strong secondary focus on the needs of the less than affluent.
The purposes of the GAGV are in general educational, charitable (in the sense of supplying social services free of charge) and relevant to the moral and mental improvement of the population, through the fostering of understanding between those of heterosexual and homosexual orientation. Accordingly, the GAGV has met its burden of proof, and is entitled to a declaration that it is entitled to a mandatory tax exemption under Real Property Tax Law § 420-a, to the appropriate ancillary relief, and to the costs and disbursements in this action.
THE CIVIL RIGHTS CLAIM UNDER 42 USC § 1983
The City raises four defenses against the imposition of liability under 42 USC § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the person injured”. The first two of the City’s defenses are patently frivolous, as they presuppose that the Assessor is being sued in his individual capacity. The caption itself speaks to these; the Assessor is being sued as the chief decision maker of the City with respect to tax exemptions, and thus in his official capacity.[4] The City next claims that the complaint fails to plead that the Assessor’s *135 acts were made pursuant to official policy or custom. No such requirement exists, and exactly this point was resolved against the City in this court’s decision of February 19, 1993. The issue is res judicata.[5]
The City’s final defense is that each exemption stands on its own, and that the Assessor was constrained by the categories of State law. This defense requires further discussion, for not all errors of law create constitutional issues; no discriminatory purpose could be found if, for example, the City’s denial of the GAGV’s application was consistent with other equally improper denials, all resting upon an indefensibly fragmented interpretation of the Real Property Tax Law’s categories. Such facts would support only the inference that the City routinely misconstrues the statute.
It appears from the record, however, that only the GAGV suffered from this misconstruction. As was discussed above, the neighborhood advocacy groups granted tax exemptions cannot be considered charitable merely because they receive some money to service the needs of low-income residents. To hold as much would be to eliminate the requirement that the group be organized or conducted primarily or principally for tax-exempt purposes. The stated purposes of neither organization fit within the narrow categories advanced by the City.
The record also shows that the City has granted tax-exempt status to a public broadcasting station (WXXI) and to several organizations which are at least as much counselling and advocacy groups as medical ones (Planned Parenthood, the Drug and Alcohol Council, and Cancer Action, the Association for the Learning Disabled, the Genesee Valley Heart Association). The bases for these exemptions are not shown, but the organizations do not fall within the permissive sections of the Real Property Tax Law, and the exemptions could not be *136 justified under the interpretation of the statute that the City, in essence, claims has been consistently applied to all applicants.
Moreover, the City’s own position on the GAGV’s ineligibility has shifted; at first the rejection was said to be based on the absence of formal curriculum and students; then the GAGV was told it was ineligible because of its advocacy focus; finally, it was told that other advocacy groups were in fact charitable organizations. These sound very much like after-the-fact rationalizations.
The inference of discrimination would not be raised were there any showing that the erroneous interpretation of Real Property Tax Law § 420-a was in fact the City’s standard for deciding applications. However, it seems clear that all other applications were correctly weighed according to the broader view taken by the Court of Appeals. There is only one reasonable explanation for the Assessor’s denial of the GAGV’s application: that the GAGV was denied a tax exemption because the Assessor (and the City) saw support, education and advocacy for the gay and lesbian community in a different light than it did support, education and advocacy for, e.g., residents of the 14621 or 19th Ward neighborhoods. The other explanations offered by the City are unsatisfactory and unsupported by the record. Thus, the GAGV’s application received discriminatory treatment on the basis of the character of its membership and the content of its speech, clear denials of its constitutional rights. As the Assessor was the person whose acts as to tax exemptions may fairly be said to express and delineate municipal policy (see generally, City of St. Louis v Praprotnik, 485 US 112, 123, supra; Rookard v Health & Hosps. Corp., 710 F2d 41, 45, n 3 [2d Cir]), his discriminatory act renders the City liable under 42 USC § 1983.
Once a violation of 42 USC § 1983 is found, there is a presumption in favor of an award of attorneys’ fees to the successful party (Annunziato v The Gan, 744 F2d 244, 253 [2d Cir]). Such fees are not punishment but compensation to encourage the bringing of civil rights claims (Coalition for Basic Human Needs v King, 691 F2d 597, 602 [1st Cir]). When an officer is sued in his or her official capacity, no defense can be raised as to the officer’s good faith (Hutto v Finney, 437 US 678, 693-700; Coalition for Basic Human Needs v King, supra; see generally, Cohen v West Haven Bd. of Police Commrs., 638 F2d 496, 504 [2d Cir]); only in cases where the defendant is innocent of real responsibility and made prompt and reason *137 able efforts to avoid or settle the lawsuit should attorneys’ fees be denied (Annunziato v The Gan, supra, 744 F2d, at 253-254).
None of these special circumstances are present here; indeed, the City’s actions have partaken of the obstructionist. The court will entertain a motion under 42 USC § 1988 to determine the amount to be awarded. Proof will be required of the reasonableness of the fees demanded, and the City will be given an opportunity to be heard on that issue.

. The facts have been edited and those sections of the decision dealing with the City’s discovery demands have been cut, but the remaining sections of the legal discussion have not been edited.

. Although the GAGV contests the propriety of both discovery demands, it has supplied the City with the requested financial records.

. It should be noted that Group 14621’s attorney, in papers drafted for a suit to force a tax exemption, characterized the organization’s purpose as "charitable”. This is hardly dispositive, and is not supported by a reading of the Group’s papers or capable of justifying the City’s decision to grant the exemption before the question was litigated.

. At oral argument on the motion to amend the complaint, the City suggested that the Board of Assessment Review was the proper party to be sued. The City has not raised this issue in connection with the present motion, and, as noted in this court’s earlier decision, the Board could have been added as a party on the court’s own motion. The addition would be merely technical; no conceivable diiference in the City’s defense would result from it.

. In that decision this court stated that the defense "is simply wrong, and rests on a discussion of case law so selective as to be misleading. Monell v Nevu York City Dept. of Social Services (436 US 658), the sole case cited, explicitly declined to set out the boundaries of municipal liability, and it is clear from subsequent cases that they may be liable for acts pursuant to policy or custom or for single acts 'by the highest officials responsible for setting policy in that area of the government’s business’ (City of St. Louis v Praprotnik, 485 US 112, 123). As the City Assessor is charged with determining applicants’ entitlement to property tax exemptions, his rejection of GAGV’s application might well subject the City to liability if found to be discriminatory.” The City’s answer, once again, cites Monell as if it exhausted the range of municipal liability and does not discuss the holding in Praprotnik.