■ In the Matter of MOUNT TREMPER LUTHERAN CAMP, INC., Appellant, v BOARD OF ASSESSORS OF THE TOWN OF SHANDAKEN et al., Respondents.—Appeal from a judgment of the Supreme Court, entered July 14, 1977 in Ulster County, upon a decision of the court at a Trial Term, without a jury, which denied petitioner's application, in a proceeding pursuant to article 7 of the Real Property Tax Law, for tax exempt status for the years 1975 and 1976. Petitioner, a Type B not-for-profit corporation (see Not-For-Profit Corporation Law, § 201), on September 24, 1972, purchased a 372-acre campsite in the Town of Shandaken, Ulster County, near Woodstock, New York. The camp was formerly owned and operated by the Metropolitan New York Synod of the Lutheran Church in America. The synod, in the words of the chairman of its camping committee, selected petitioner Mount Tremper Lutheran Camp, Inc., from among three prospective purchasers, viewing the petitioner as "most likely to carry on the type of camping that we had been attempting to carry on ourselves as owners of the camp." The synod inspects the camp each year before giving its recogniton to petitioner as an approved camp after a review of its activities. Petitioner's charter gives the synod a reversionary interest in the premises in the event of the dissolution of petitioner as a corporation. However, petitioner is an independently owned and operated entity. The camp has three basic programs characterized as summer, winter and contract. The summer program comsists of six to eight weeks of camp activities for children age 7 to 17. The winter program essentially is comprised of weekend retreats by various church and other groups. The contract program embraces outside groups who rent some of the camp's facilities on a regular basis. Among the contract groups in the years in question were the Pinecrest Leadership School, a one-week study group run by Pastor Tiechman of New Hyde Park, the Lutheran Soccer League, the Appletree School, the Creative School of Music and the Ark, an alternative school sponsored by Transformation Foundation. Petitioner also generated substantial income from a variety of sources. The six-to eight-week camp sessions are operated directly by petitioner. Approximately seven hours each day are devoted to recreation or recreational activities. The formal religious aspect of the summer day camp consists of saying grace before each meal, vespers at night, and a presentation called Christmas in July during a two-week period in July. Harold Haar, executive director of petitioner, described the religious program as one of "soft sell," without formal involvement in Christian instruction. Religious singing consists of songs such as "Put your Hands in the Hands of the Man that Stills the Water." Parables are used by camp counselors in discussion sessions. On appeal, petitioner contends, contrary to the findings of the trial court, that it is organized for Christian camping and, therefore, qualifies for exemption. It asserts that its summer camping activities were exempt "religious and moral purpose uses" under subdivision 1 of section 421 of the Real Property Tax Law. Petitioner argues that its winter leasing of facilities to other organizations qualified for an exemption under subdivision 2 of section 421. It next asserts that its rentals of otherwise idle portions of the premises for nonexempt uses and the sale of excess timber and gravel are not inconsistent with the "exclusive" use

requirement necessary for tax exemption. Petitioner additionally argues that financial transactions with members of its board of directors did not forfeit the exemption. Finally, petitioner urges that sales of portions of the original property did not destroy its entitlement to exemption. At issue is whether petitioner is entitled to exemption from real property taxes under section 421 (subd 1, par [a]) of the Real Property Tax Law which, insofar as pertinent, provides: "Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, education, moral or mental improvement of men, women, or children or cemetary purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation * * * or by another such corporation * * * as hereinafter provided shall be exempt from taxation as provided in this section." In order to be entitled to exemption from taxation under section 421 (formerly § 420) of the Real Property Tax Law, petitioner must pass a three-step test: (1) it must be organized exclusively for the purposes enumerated in section 421; (2) its property must be used primarily in furtherance of these purposes; and (3) no pecuniary profit (beyond reasonable compensation) may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit making operations (*Matter of Shrine of Our Lady of Martyrs of Auriesville v Board of Assessors of Town of Glen*, 40 AD2d 75, 76). Exclusive, as used in section 421, means principal or primary (*Matter of Association of Bar of City of N. Y. v Lewisohn*, 34 NY2d 143, 153; *Order Minor Conventuals v Lee*, 64 AD2d 227, 230). This court has stated in the past that the certificate of incorporation must admit of no construction which would permit corporate activity for purposes not specified as exempt under the statute (*Matter of Shrine of Our Lady of Martyrs of Auriesville v Board of Assessors of Town of Glen, supra; Crusade for Christ v Town of New Lebanon*, 36 AD2d 247, 250, affd 31 NY2d 765). The purposes set forth in petitioner's corporate certificate are as follows: "To assume ownership and operation of the facility known as MT. TREMPER LUTHERAN CAMP * * * to organize, conduct and maintain summer camps and centers for instructive and recreative purposes * * * to diffuse a general knowledge of religion, literature, art and science * * * to assist other religious, civic, fraternal movements and organizations for kindred purposes." The stated recreational purpose does admit to a use not exclusively or primarily related to the enumerated tax exempt purposes. Petitioner's certificate of incorporation, therefore, fails to meet the statutory requirement of exclusive organization for an enumerated purpose. This failure to pass the initial test alone would require affirmance, however, there are additional grounds on which the judgment can be sustained which we feel merit discussion. Petitioner maintains its primary use of these premises was for Christian camping and that its other nonexempt uses were incidental to its primary use. However, upon an examination of the record we must disagree. The Lutheran Soccer League ran for one week during the summer concurrently with the camp's main summer program. The soccer league members were on the grounds to improve their soccer skills and their days were spent in that pursuit. Petitioner maintained an open camping policy and, also, leased or rented its facilities to various groups without significant supervision of their participation in the religious activities. Groups rarely were denied rental of the facilities and then only on the grounds of lack of supervision. Petitioner was a member of the American Camping Association and American Youth Hostels and its facilities were listed by those organizations. Petitioner charged campers on a per diem rate. It also rented its facilities for a

wedding, and local church fund-raising picnics. Petitioner's summer camp was its main activity and accounted for about 50% of its total income for the years in dispute. Pinecrest Leadership School provided 10-15%. the winter program of retreats provided 15-20%. The Appletree School accounted for 2% of the total. The Ark and Creative School of Music accounted for 6-7% of the total in their respective years. Small amounts of money were obtained through several nonexempt sources. The American Youth Hostels paid $400. Rental of a portion of the premises for the wedding yielded $300. Gravel sales accounted for up to $100. Sales of lumber made as the result of a suggestion from the State Conservation Department to thin out overgrowth brought in $3,000 in each of the years in question. Rental of tent and trailer sites to the general public on the camping site (11.7 acres) accounted for $600 in 1975 and $84 in 1976. However, this decrease in the tent site rentals in 1976 was apparently due to the cost of construction of a wash house and a gate house on the camping grounds. Various sales of portions of the acreage of the petitioner yielded a net gain of about $38,000 to petitioner in 1975. Thus, the proof indicates that petitioner's alleged primary use, Christian camping, provided about 65% of its annual income and that nonexempt uses accounted for approximately 25%. The remainder was derived from petitioner's school tenants and donations. The income from the school tenants, we note, would be exempt by virtue of subdivision 2 of section 421 of the Real Property Tax Law since they were tax exempt in their own right. On this record we must conclude that the nonexempt uses of the petitioner's property were cumulatively substantial. Petitioner failed to pass the second step set forth in *Matter of Shrine of Our Lady of Martyrs of Auriesville v Board of Assessors of Town of Glen, (supra)*. Its property was not used primarily in furtherance of the purposes enumerated in section 421 *(People ex rel. Mizpah Lodge v Burke,* 228 NY 245). Petitioner is not exclusively organized for tax exempt purposes in view of its actual practices *(University of Rochester v Wagner,* 63 AD2d 341; *Matter of Genesee Hosp. v Wagner,* 47 AD2d 37, affd 39 NY2d 863). Judgment affirmed, without costs. Mahoney, P. J., Greenblott, Main, Mikoll and Herlihy, JJ., concur.