■ In the Matter of MARY IMMACULATE SCHOOL OF EAGLE PARK, Respondent, v ALBERT WILSON, as Town Assessor of the Town of Ossining, et al., Appellants. (And Another Similar Action.)—In proceedings pursuant to CPLR article 78, *inter alia,* to review a determination of appellant Albert Wilson revoking the exemption from taxes as to petitioner's real property and placing same on the tax rolls, the appeal, as limited by the appellant's brief, is from stated portions of a judgment of the Supreme Court, Westchester County, dated May 12, 1978, which, *inter alia,* invalidated appellant Wilson's determination with respect to real property known on the tax map of the Town of Ossining as section 1, plate 9, block 22, lot 1. Judgment affirmed, insofar as appealed from, without costs or disbursements. In June, 1975 petitioner, the Mary Immaculate School of Eagle Park, organized and administered by the Dominican Sisters of the Third Order of St. Dominic of St. Mary of the Springs (Dominican Sisters), ended its full-time operation of a high school. Appellant Albert Wilson, the Town Assessor of the Town of Ossining, added the school's property to the tax rolls as a result of the termination of the full-time operation of the school and what he perceived as improper utilization of the property owned by the petitioner. Since full-time operation of the school ended, the property has been used by the Dominican Sisters for a variety of religious purposes (retreats, days of recollection) as they had used it in the past. In addition, the school functioned on a limited basis performing duties incidental to the 1975 graduating class and, in February, 1977, began holding classes four times a week in English as a second language. The Dominican Sisters have been continuing to seek alternative educational uses for the property since before the termination of full-time operation of the school. The petitioner brought these article 78 proceedings to restore its real property tax exemption granted pursuant to section 421 of the Real Property Tax Law. To obtain an exemption as a nonprofit organization under section 421 a three-step test must be met. First, the owner of real property seeking the exemption must be an organization organized or conducted exclusively for one or more exempt purposes (e.g., religious, educational, or charitable). Second, the property must be used exclusively to carry out one or more of the organization's exempt purposes either by the owning organization or by another organization that would be entitled to an exemption if it owned real

property. Third, no member, employee or officer of the organization may receive any pecuniary profit except as reasonable compensation for services rendered (Real Property Tax Law, § 421, subd 1, pars [a], [d]). We agree with the trial court that the petitioner has met its burden under section 421. The real property in question is owned by the petitioner, which was organized for the exclusive purpose of operating a high school. The school was conducted exclusively for educational and religious purposes. Both these purposes are within the exempted class of purposes set forth in section 421. As no allegations have been made concerning the receipt of pecuniary profit, it is apparent that the only question before this court is whether the current usage of the property is within, or incidental to, the exclusive purposes for which the petitioner was organized or its activities were conducted. The general method by which an organization's purposes are discovered is a perusal of its enabling documents (see *Matter of De Peyster,* 210 NY 216). However, in determining whether activities are consistent with an organization's purposes under section 421, one must look beyond the four corners of its charter to the manner in which it pursues its organizational purposes (see *Mohonk Trust v Board of Assessors of Town of Gardiner,* 47 NY2d 476, 483-484). It is apparent that the petitioner was organized and conducted exclusively for educational and religious purposes. The current usage of its property is not inconsistent with those purposes. The appellants' argument, that any usage of the petitioner's property other than as a high school is not consistent with the petitioner's exclusive organizational purpose, is an interpretation that is so "literal and narrow that it defeats the exemption's settled purpose" and must not be followed (cf. *Mohonk Trust v Board of Assessors of Town of Gardiner, supra,* p 483). In addition, the involvement of the Dominican Sisters with the petitioner and their use of the property for religious purposes is not a ground upon which the exemption can be withheld. The Dominican Sisters are the soul and spirit of the petitioner. The appellants cannot disassociate the Dominican Sisters from the petitioner merely because the title to the property is in the name of the petitioner (see *Matter of American Press v Lewisohn,* 74 Misc 2d 562, affd 48 AD2d 798). The current, albeit limited, use of the property is also not a ground to deny the exemption. This court has held that a 200-acre tract used solely as a summer camp from June through July was entitled to a full exemption (see *Greater N. Y. Corp. of Seventh-Day Adventists v Town of Dover,* 29 AD2d 861, app dsmd 23 NY2d 682). At bar, the property is being utilized all year round as a religious retreat and four days a week for English classes. As we said in *Greater N. Y. Corp. of Seventh-Day Adventists v Town of Dover* (p 862) "In our opinion, the record at bar fails to reveal any use of the property for purposes other than those for which it was organized". Accordingly, the judgment is affirmed insofar as appealed from. Damiani, J. P., Titone, Cohalan and O'Connor, JJ., concur.