In the Matter of NEW YORK BOTANICAL GARDEN, Appellant, v ASSESSORS OF THE TOWN OF WASHINGTON et al., Respondents.

Second Department, May 4, 1981

APPEARANCES OF COUNSEL

*McCabe & Mack (Lord, Day & Lord, [John J. Loflin,*

*J. Joseph McGowan, Henry deF. Baldwin* and *Gail A. Schneider*] of counsel), for appellant.

*Van De Water & Van De Water (John K. Gifford* and *James E. Nelson* of counsel), for respondents.

OPINION OF THE COURT

LAZER, J. P.

■ These appeals involve both the meaning and breadth of interpretation to be given subdivision 1 of section 421 of the Real Property Tax Law under which real property owned by nonprofit entities organized or conducted primarily for certain specifically enumerated purposes and primarily used for those purposes is absolutely or qualifiedly exempt from local taxation. The instant owner and appellant is New York Botanical Garden (Botanical Garden), a corporation organized by a special act of the Legislature a century ago (see L 1891, ch 285). The corporation maintains the famous Bronx Botanical Gardens which is owned by the City of New York and is exempt from taxation. In 1973, the trustees of the Mary Flagler Cary Charitable Trust donated 1,900 acres of property in Dutchess County to Botanical Garden by a deed which specified that the land was to be used as an arboretum and that the trustees would have the right to reacquire the property if the use ceased. The current controversy involves 1,640 acres of the property (now known as the Cary Arboretum) which lie in the Town of Washington. The town assessors have withdrawn the tax exemption previously enjoyed by the arboretum and have restored the property to the tax rolls. The appeals are from Special Term's dismissal of Botanical Garden's CPLR article 78 proceeding challenging the assessors' action. We believe reversal is mandated.

I

Section 421 (subd 1, par [a])[1] of the Real Property Tax

---

1.    Subdivision 1 of section 421 of the Real Property Tax Law states:

"§ 421 Non-profit organizations

"1.    (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or

*(n. contd.)*

Law provides that property owned by a corporation or association organized or conducted "exclusively" for religious, charitable, hospital, educational, mental or moral improvement or cemetery purposes or two or more such purposes and used "exclusively" for such purposes is entitled to exemption from taxation. Prior to its amendment in 1971, subdivision 1 of section 421 included 14 additional categories of purposes and uses which entitled owners to exemption, but in that year the Legislature added a new paragraph (b) to subdivision 1 (see L 1971, ch 414, § 2) granting to the governing boards of municipal corporations the power to eliminate the unqualified exemption previously enjoyed by organizations in the 14 categories. Among the categories whose exempt status was thus subjected to the prospect of extinction by local action were entities whose purposes were "scientific". In 1977 the Washington Town Board enacted Local Law No. 3[2] under which the property of organizations whose purposes or uses were listed in paragraph (b) was declared taxable. The Washington assessors

mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.

"(b) Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association as hereinafter provided, shall be exempt from taxation; provided, however, that such property shall be taxable by any municipal corporation within which it is located if the governing board of such municipal corporation, after public hearing, adopts a local law, ordinance or resolution so providing. None of the following subdivisions of this section providing that certain properties shall be exempt under circumstances or conditions set forth in such subdivisions shall exempt such property from taxation by a municipal corporation whose governing board has adopted a local law, ordinance or resolution providing that such property shall be taxable pursuant to this paragraph (b)."

2. The pertinent section of Local Law No. 3 reads as follows: "*Section 1*: Real property located within the Town of Washington and owned by a cor-

*(n. contd.)*

then proceeded to restore the Cary Arboretum to the tax roll despite the fact that the property had been exempted from taxation since 1973 on the basis of Botanical Garden's educational purposes and the use of the property for those purposes. The assessors' action was premised upon the postulation that the purposes and uses actually were scientific and not educational.

Botanical Garden responded with the current article 78 proceeding in which it seeks to enjoin the town and its assessors from placing the property on the assessment roll and to have the property declared tax exempt. At Special Term, the parties stipulated as to the facts, furnished the court with various exhibits (including depositions), and submitted the proceeding for determination. The court found that Botanical Garden was organized and conducted primarily for scientific purposes, that the primary use of the arboretum property was for those purposes, and it dismissed the petition. These appeals ensued.

## II

Although subdivision 1 of section 421 of the Real Property Tax Law provides that the exempt purposes and uses it lists must be the owning organization's exclusive ones, judicial gloss has translated the word "exclusively" as referring to the "principal" or "primary" corporate purposes and land uses (see *Mohonk Trust v Board of Assessors of Town of Gardiner*, 47 NY2d 476; *Matter of Association of Bar of City of N. Y. v Lewisohn*, 34 NY2d 143, 153). But before we can consider the competing contentions relative to purpose and use, we must determine which of the litigating parties bore the burden of proof on those issues at Special Term. The town stresses the settled proposition that the

poration or association which is not organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for bible, tract, benevolent, missionary, infirmary, scientific, literary, bar association, medical society, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association, whether by lease or otherwise, shall be taxable."

party seeking a tax exemption has the burden of demonstrating entitlement to it *(Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196, 197; *Matter of Koner v Procaccino,* 39 NY2d 258, 264 [citing *Matter of Grace];* *Matter of Young v Bragalini,* 3 NY2d 602-606; *Matter of Elkind v State Tax Comm.,* 63 AD2d 789; *Matter of Marshall v State Tax Comm.,* 62 AD2d 1124; *Matter of International Harvester Co. v State Tax Comm.,* 58 AD2d 125, 126; *Matter of Tripp v State Tax Comm.,* 53 AD2d 763, 764; *Matter of F. O. R. Holding Co. v Board of Assessors of Town of Clarkstown,* 45 AD2d 875, 876, app dsmd 35 NY2d 959; *Matter of Lakeland Farms Co. v State Tax Comm.,* 40 AD2d 15, 18), and Special Term adhered to that general principle in dismissing the petition. We are persuaded that the principle was inapplicable under the circumstances.

■ Under section 421 (subd 1, par [a]) of the Real Property Tax Law, religious, charitable, hospital, educational, moral or mental improvement and cemetery purposes and uses provide the bases for absolute exemption. But the 14 categories contained in paragraph (b) of subdivision 1 are entitled to freedom from taxation only in the absence of local governing board action eliminating the exemption. Under either paragraph of subdivision 1, however, an organization seeking exemption must bear the burden of establishing that it is (1) an association or corporation organized or conducted primarily or principally for one or more exempt purposes and (2) that the particular land for which the exemption is sought is used primarily or principally for one or more exempt purposes *(Mohonk Trust v Board of Assessors of Town of Gardiner,* 47 NY2d 476, 483, *supra; Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153, *supra; Matter of Mary Immaculate School of Eagle Park v Wilson,* 73 AD2d 969; *Matter of Mount Tremper Lutheran Camp v Board of Assessors of Town of Shandaken,* 70 AD2d 984, 985). The burden is reversed, however, where local authorities seek to withdraw an already existing exemption, for then it is the "taxing authority [which] must prove not only that the corporate owner *is* organized exclusively for [subd 1 (par [b]) qualifiedly exempt] purposes, but as well that it *is not*

organized or conducted exclusively for [subd 1 (par [a])
absolutely exempt] purposes" *(Matter of Watchtower Bible
& Tract Soc. of N. Y. v Lewisohn,* 35 NY2d 92, 97; see, also,
*Matter of Swedenborg Foundation v Lewisohn,* 48 AD2d
798, affd 40 NY2d 87; *Matter of Trustees of Columbia
Univ. in City of N. Y. v Town of Orangetown,* 93 Misc 2d
261, 264, affd 60 AD2d 582).

Since the current dispute was engendered by the with-
drawal of Botanical Garden's education-based exemption, it
is the rule enunciated in *Watchtower (supra)* which applies
and, therefore, the town had the burden of establishing that
Botanical Garden was organized or conducted and the Cary
Arboretum was used primarily for purposes which are only
qualifiedly exempt under section 421 (subd 1, par [b]) of
the Real Property Tax Law.

## III

The respective positions on the substantive issues of pur-
pose and use can be briefly stated. Botanical Garden argues
that it is primarily organized or conducted for charitable,
educational and/or moral or mental improvement purposes
and that the arboretum use is consistent with those pur-
poses. The town first invokes the oft-stated rule that tax
exemption statutes should be strictly construed against the
taxpayer seeking the exemption (see *Matter of Association
of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153,
*supra; Matter of City of Lackawanna v State Bd. of
Equalization & Assessment of State of N.Y.,* 16 NY2d 222,
230) and then posits that Botanical Garden's primary cor-
porate purposes and the uses of the arboretum property are
scientific in nature. Charitable purposes, urges the town,
import almsgiving or benefactions to the poor; educational
purposes connote something closely akin to what a college
or university does; and moral and mental improvement
purposes are confined to organizations such as the YMCA,
Girl Scouts, or others of a similar nature (see, e.g., *Matter
of Association of Bar of City of N. Y. v Lewisohn, supra,*
p 154; *Matter of Swedenborg Foundation v Lewisohn,* 40
NY2d 87, 94-95, *supra; Matter of Presbyterian Residence
Center Corp. v Wagner,* 66 AD2d 998, affd 48 NY2d 885).

While the town's position has some superficial appeal, we cannot read the statute with such lexicographical precision. Instead, we are mindful of the more recently stated principle that a construction of section 421 of the Real Property Tax Law that is so narrow and literal as to defeat the settled purposes of the exemption is to be avoided *(Mohonk Trust v Board of Assessors of Town of Gardiner,* 47 NY2d 476, 483, *supra; Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196, *supra; Matter of Association of Bar of City of N. Y. v Lewisohn, supra,* p 153; *Engle v Talarico,* 33 NY2d 237, 240; *People ex rel. Watchtower Bible & Tract Soc. v Haring,* 8 NY2d 350, 358; *Matter of Mary Immaculate School of Eagle Park v Wilson,* 73 AD2d 969, 970, *supra; Direen Operating Corp. v State Tax Comm.,* 46 AD2d 191, 193). Indeed, in a most current determination on real property tax exemption, the Court of Appeals has lent further support for the theory that it is leaning away from strict construction (see *Matter of St. Joseph's Health Center Props. v Srogi,* 51 NY2d 127).

We proceed, then, to the merits.

IV

The first part of the two-pronged test for evaluating the right to exemption—whether the entity is "organized or conducted" for exempt purposes—necessarily has an initial focus upon the stated purposes for which the organization seeking the exemption was established. At one time, the entity's certificate of incorporation or charter was conclusive on the question (see *Matter of De Peyster,* 210 NY 216, 220), but in *Mohonk Trust v Board of Assessors of Town of Gardiner* (47 NY2d 476, 484, *supra),* the Court of Appeals observed that "an organization may be entitled to an exemption if it is either 'organized *or conducted'* primarily for an exempt purpose or purposes. Hence, the determination of an organization's primary purpose may turn upon the extent to which it pursues the various purposes for which it was created, and is not necessarily dependent solely upon the language of the document pursuant to which the organization operates."

Since the first prong of the test now contains alternatives,

its requirements are met if the exemption seeking organization was either organized for or is currently conducted for exempt purposes. Here, the statute which created Botanical Garden provided that it was organized "for the purpose of establishing and maintaining a botanical garden and museum and arboretum therein [and elsewhere within or without the State of New York], for the collection and culture of plants, flowers, shrubs and trees, the advancement of botanical science and knowledge and the prosecution of original researches therein and in kindred subjects, for affording instruction in the same, for the prosecution and exhibition of ornamental and decorative horticulture and gardening, and for the entertainment, recreation, and instruction of the people." (L 1891, ch 285.)

The quoted language has an obvious environmental, conservational and horticultural emphasis, and as Botanical Garden argues, such purposes have been construed as charitable, educational and for moral or mental improvement and as warranting tax exemption if public access to the property also is permitted to an extent compatible with fulfillment of the stated purpose (see *Matter of North Manursing Wildlife Sanctuary [City of Rye]*, 48 NY2d 135; *Mohonk Trust v Board of Assessors of Town of Gardiner, supra; People ex rel. Untermyer v McGregor*, 295 NY 237). The *Untermyer* case illustrates the proposition. There the certificate of incorporation of the entity formed to receive the bequest of the estate known as "Greystone" provided (p 242) that the corporation would "develop, improve, maintain and operate such land as and for a public park and gardens, and, if and to the extent so determined by its directors from time to time, as and for a public playground and/or for horticultural purposes". Mr. Untermyer's will had referred to the open air theatre and walled garden known as the "Greek Gardens" that had been for "many years devoted to exhibitions of flowers and flowering plants" (p 241). Noting that the certificate implemented the purposes of the testator, the Court of Appeals held the corporate purposes were charitable and thus tax exempt.

In *Matter of North Manursing Wildlife Sanctuary (City of Rye) (supra,* p 139), the chartered purposes approved as exempt were " 'to secure, hold and develop land

as a sanctuary for wild birds, including migratory species, and animals; to protect, preserve and promote the continuation of the species of wild birds and animals native to the section where this corporation shall exist; to promote their culture and to introduce and study new species of wild birds; to introduce and disseminate information concerning new species; and to restrict the killing or destruction of wild birds, and to provide a preserve for those presently existing'." *North Manursing* was decided only a few months after *Mohonk Trust* (47 NY2d 476, *supra)* and has its obvious derivation in the earlier case. In *Mohonk Trust* (p 484), the issue was whether "preservation of wilderness areas for the benefit of the public" was an exempt purpose under section 421 (subd 1, par [a]). Declaring that it could not see why charitable, educational and moral or mental improvement purposes "should not encompass lands used for environmental and conservation purposes which are necessary to the public good and which are open to and enjoyed by the public" (p 484), the court concluded that such purposes were exempt. On the strength, then, of *North Manursing, Mohonk Trust* and *Untermyer (supra)*, it certainly seems that Botanical Garden's chartered purposes are charitable, educational and moral or mental improvement and therefore absolutely exempt under section 421 (subd 1, par [a]) of the Real Property Tax Law.

Ably represented, however, the town vigorously contends that on the basis of Botanical Garden's correspondence with the Cary trustees and its various releases, pamphlets and reports, the corporation frequently described itself as a scientific organization. These declarations, contends the town, are the best evidence of the purposes for which the corporation is organized or conducted. There are two flaws in this postulation: first, it ignores Botanical Garden's substantial references to itself as an educational and charitable institution; second, prior to the enactment of Local Law No. 3, Botanical Garden had applied for and received a tax exemption from the town on the grounds it was organized for educational purposes and uses, notwithstanding the fact that under the then existing statute, exemption was also available to a scientific organization. If we are to accept the town's reasoning that self-description is the best indicia

of organizational purpose, we would also have to accord significant weight to Botanical Garden's designation of itself as an educational organization, particularly since that description was accepted by the town without challenge for four years.

Balancing the record on the purposes issue, we conclude the town has failed to prove that Botanical Garden is not organized or conducted for exempt purposes.

## V

The second part of the exemption test relates to the actual use of the property at issue. The Cary Arboretum tract is essentially a forest, replete with numerous varieties of trees, plants, flowers and shrubs and inhabited by wildlife indigenous to woodland areas. Although most of the land is being preserved in its natural state, substantial portions of it have been cleared to facilitate a variety of horticultural plantings and displays. These sites are monitored and studied to determine the growth of the various plants and their suitability to the area. Several public roads traverse the property and there are also paths and access roads which lead to and through the more heavily wooded sections. The property contains some 20 buildings, of which the main ones are the Plant Science Building containing a library, laboratory, greenhouse and offices, and the Gifford House which is an education center containing classrooms, meeting rooms and offices. There is also a visitor's center, housing and offices for staff, a wildlife field laboratory and several maintenance and storage shops. The arboretum is open to the public for recreation and nature walks, as well as hunting and fishing in season. Although a large portion of the land is not available to the public, the access is consistent and compatible with the nature of the arboretum, for restricted public access is essential to preservation of the arboretum's conservational and environmental purposes (see *Matter of North Manursing Wildlife Sanctuary* [*City of Rye*], 48 NY2d 135, 140, *supra*).

On this record, we cannot agree with Special Term's conclusion that the Cary Arboretum land "is utilized primarily for scientific and research purposes". In *Mohonk*

*Trust v Board of Assessors of Town of Gardiner* (47 NY2d 476, 480-481, *supra*), the exempt uses were described by Judge GABRIELLI as "[A] variety of environmental, conservation, educational and compatible recreational purposes. The land is maintained in its natural state in an attempt to preserve some part of our natural heritage for the enjoyment and benefit of present and future generations. The Trust has created a system of trails through the wilderness areas, and provides guide and informational services while at the same time maintaining and protecting the unique plant and animal life found on the Trust lands. A large number of schools and universities throughout the country have included field and study trips to the Trust lands as an essential part of their curricula in an assortment of fields including geology, biology, zoology, forestry, and ecology, as was indicated by the many expert witnesses who testified on petitioner's behalf. The Trust itself maintains records on the development and growth of the plant and animal life in the area, and numerous scientific studies are conducted on Trust property. In addition, members of the public are allowed to use Trust land for activities such as rock climbing, backpacking, camping, birdwatching and nature hikes." Although not all of the Cary Arboretum land has been left in its natural state, even the portions put to other uses have been planted with various species of plant life which are studied as their growth progresses and as they become part of the ambient woodland.

The crux of the town's argument is that the horticultural and botanical research and scientific studies carried out at the arboretum constitute the primary use of the property, mandating classification as scientific. If that is so, the town has failed to sustain its burden of proving it. Not only do researchers comprise a small percentage of the arboretum's staff, but also much of the research is aimed at determining the suitability and adaptability of various species of plants and trees to urban environments and monitoring the effects of the atmosphere and pollutants on these species. These are the very environmental and conservation purposes considered in *Mohonk Trust (supra)*, and the fact that "numerous scientific studies" occur at the arboretum, as they did in *Mohonk Trust*, does not efface or transform their

primary environmental purposes. Any other research which might defy direct classification as educational or environmental is also reasonably incidental to the main exempt uses and thus does not defeat the exemption (see *Matter of American Mgt. Assns. v Assessor of Town of Madison*, 63 AD2d 1102, 1103, affd 47 NY2d 841, for the reasons stated in the majority memorandum at the Appellate Division; see, also, *Matter of Faculty-Student Assn. of State Univ. Coll. at Oswego v Sharkey*, 35 AD2d 161, affd 29 NY2d 621).

Accordingly, the amended judgment must be reversed and the petition granted.

MANGANO, GIBBONS and COHALAN, JJ., concur.

Appeal from judgment of the Supreme Court, Dutchess County, dated October 24, 1979, dismissed, without costs or disbursements. The judgment was superseded by an amended judgment of the same court dated November 30, 1979.

Amended judgment reversed, on the law, without costs or disbursements, and petition granted.