OPINION OF THE COURT
John G. Leaman, J.
Petitioner, Bruderhof Communities in N.Y., Inc., owns approximately 479 acres of land within four contiguous parcels in the Town of Hunter, Greene County, New York.[1] Excepting a parcel of approximately 7.6 acres, upon which is located a school and ancillary recreational facilities, the entire real property which is the subject of these proceedings[2] was determined by respondents to be taxable. Some 300+ persons reside in buildings located upon the premises. As reflected in petitioner’s certificate of incorporation, its purposes include “further [ing] the faith and mission of Jesus Christ * * * and to spread this truth and way of life whose character is community * * * in such a way that the members form a spiritual unity, in complete community of goods and so that in the community life of the Society all members work together as an embodiment of peaceful activity, of purity in mutual relationships and of simple truthfulness, testifying in word and deed that love, justice, truth and peace are the will of God for all mankind”.
In conformity with the certificate of incorporation, and consistent therewith and with the tenets of belief which underlie it, as well as the organization’s history, petitioner’s members live in community with one another, in a classless society, neither owning property[3] nor receiving wages or dividends, but obtaining food, clothing, shelter and other necessities and ordinaries of life which, on a material plane, are compatible with human dignity but are unattended by any arguable luxury.[4] The members do not hold employment unconnected with their communal life, but, rather, work at petitioner’s factory where furniture as well as educational and rehabilitative products are manufactured. As aforesaid, the members do not *778 receive any wage or dividend, nor is there any formal or acknowledged hierarchy or distinction between or among the members in their performance of factory tasks.
There is no reasonable doubt that petitioner is, within the contemplation of RPTL 420-a (1) (a), “a corporation or association organized or conducted exclusively for religious, charitable, hospital, education, or moral or mental improvement of men, women or children purposes, or for two or more such purposes”. The principal question at hand is whether, within the contemplation of RPTL 420-a (1) (b), any “member or employee of the * * * corporation or association shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes”. If profit may inure to petitioner’s members, then petitioner is not entitled to a tax exemption for its property. If there is no such inurement of profit, actual or potential, then petitioner is entitled to a tax exemption for its real property which is used to further its purposes or is reasonably and sufficiently incidental to such purposes.
In applying the statute to particular cases, courts have articulated the following criteria for entitlement to a tax exemption for real property: (1) the corporation or association must be organized exclusively for the purposes enumerated in RPTL 420-a; (2) its property must be used primarily in furtherance of such purposes; and (3) no pecuniary profit (apart from reasonable compensation) may inure to the benefit of any of its officers, members or employees, nor may it simply be used as a guise for profit-making operations (Mt. Tremper Lutheran Camp v Board of Assessors, 70 AD2d 984).
As aforesaid, there is no reasonable doubt that petitioner complies with the first of these criteria. Its certificate of incorporation, tenets of articulated belief, and its conduct and that of its members, all provide a substantial and persuasive basis for such a conclusion.
With regard to the third criterion, where the instant litigation has centered, although not to the exclusion of other contentions, respondents have concluded, in denying the tax exemption, that the provision by petitioner to its members of food, clothing, shelter, medical care and other necessities and ordinaries of life constitutes a profit inuring to the members, contrary to RPTL 420-a (1) (b).
Respondents place particular reliance for such characterization upon Federal cases applying analogous statutory provi *779 sions regarding tax exemptions.[5] In Beth-El Ministries v United States (1979 WL 1384, 1979 US Dist LEXIS 11894 [US Dist Ct, DC]), the Commissioner of Internal Revenue proposed to deny tax-exempt status to plaintiff, a corporation whose certificate of incorporation set forth purposes consonant with being a nonprofit, interdenominational religious community. Members of plaintiff committed all of their possessions to the community, and those members who were employed outside the community donated their salaries to plaintiff. In upholding the Commissioner’s proposed denial of tax-exempt status, the court concluded that the receipt by members of food, clothing, shelter and the like from plaintiff was the inurement to such members of a private benefit. At first glance, Beth-El is similar in its facts to the present case. However, there are material distinctions, most notably the commitment by petitioner herein to a communal and classless way of life for its members as a matter of articulated religious principle rather than a de facto arrangement of convenience or mere social utility, a commitment which does not appear to be present in Beth-El. Additionally, members of Beth-El were employed outside the community, receiving salaries which they gave to the community, whereas petitioner’s members are employed at petitioner’s factory and receive no salary for their labor. A similar analysis may be applied to the case of New Life Tabernacle v Commissioner of Internal Revenue (1982 WL 10663, 1982 Tax Ct Memo LEXIS 379 [US Tax Ct]), also cited by respondents in support of their characterization of the necessities and ordinaries of life provided by petitioner to its members as profits inuring to the latter’s benefit. Thus, a line of cases cited by respondents, at best informative but not authoritative, ultimately are distinguishable from the instant case upon a material difference in operative facts.
It is the holding of this court that the provision by petitioner to its members of the necessities and ordinaries of life does not constitute the inurement to such members of pecuniary or other profit such as to result in petitioner’s disqualification for a tax exemption with respect to that real property utilized by petitioner in furtherance of its articulated purposes. To conclude otherwise would be to determine that a community of individuals who have voluntarily entered into association with one another, upon qualifying and articulated tenets of religious *780 conviction, and who put into practice a classless society within which no distinction of status or material worth is implemented or condoned, and who are self-sufficient such that their ordinary and reasonable expenses are paid for through capital and labor generated by themselves within the context of their community rather than through employment outside the community, with the attendant result that their classless, communal lives are undiluted by the necessity or practice of venturing into the conventional world outside their community where class and other distinctions, most notably the valuation of persons and their labor through a hierarchy of compensation and prestige, are practiced, cannot exist in the purity of its avowed intentions, but, rather, must resort, as argued by respondents, to a system of “reasonable compensation” for its members in order to qualify for a tax exemption. Such a determination would be inconsistent with the relevant statute’s intent, but if it were not so, then the statute would be unconstitutional if applied to deny upon these facts a tax exemption to petitioner for its real property used in furtherance of its purposes, for such an application would be an invalid discrimination by government with respect to the exercise of religion (NY Const, art XVI, § 1; Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn., 55 NY2d 512; cf., Walz v Tax Commn., 397 US 664; Matter of Klein, 78 NY2d 662, cert denied sub. nom. Klein v Hartnett, 504 US 912).
Nor does the fact that petitioner generates substantial profits through its manufacturing operations result, upon the evidence before the court, in the disqualification for a tax exemption, since all such profits are used in conformity with statutorily permitted purposes (Gospel Volunteers v Village of Speculator, 33 AD2d 407, affd 29 NY2d 622). It is true that petitioner has what appear to be substantial assets, including cash on hand; however, it cannot plausibly be concluded upon the present record that such an accumulation, in and of itself, constitutes a separate and invalid purpose resulting in disqualification to receive a tax exemption. No expenditures by petitioner have been used for statutorily unpermitted puposes, and it is questionable whether the judicial branch is competent to make policy determinations concerning when religious or other qualifying organizations should be deemed to have accumulated excessive assets such that their avowed purposes have altered or been compromised.
Regarding the remaining (i.e., second) enumerated criterion for entitlement to a tax exemption upon real property (cf., Mt. *781 Tremper Lutheran Camp v Board of Assessors, supra), namely, that the subject property must be used primarily in furtherance of petitioner’s avowed and permitted purposes, it is fairly to be concluded, upon the available record, that the entirety of the real property which is in controversy is used in furtherance of petitioner’s purposes. A condition of approximately 300 persons residing on approximately 479 acres, including children who are educated on site through 8th grade and who are taught to comprehend a divine presence in nature and elsewhere, as well as in solitude, and whose distinct and communal way of life is enhanced by adequate space in a rural setting, including a buffer zone, is not reasonably to be concluded as a utilization of the subject real property in excess of or apart from petitioner’s avowed and permitted purposes (Nassau County Council Boy Scouts v Board of Assessors, 84 AD2d 862; Order Minor Conventuals v Lee, 64 AD2d 227).
Accordingly, and upon all of the foregoing, petitioner is determined to be entitled to the relief requested in its pleadings, in conformity with this decision.

. The taxable status dates at issue herein are March 1, 1995-1998.

. A factory located upon approximately 3.7 acres owned and operated by petitioner and the proceeds from which are used to defray living expenses of petitioner’s members, is separately assessed, although not, apparently, until subsequent to the 1995 tax roll, and is conceded by petitioner to be taxable.

. Members of petitioner irrevocably convey to petitioner all of their property and possessions upon entering into membership.

. Members cannot own any property, nor can they inherit property, and if they choose to leave the community, they cannot receive, as of right, any property whatever.

. Respondents deem it immaterial, however, that petitioner has been concluded to be an exempt organization under section 501 (d) of the Internal Revenue Code (26 USC).